IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONALD W.,[1]                                           Case No. 6:21-cv-00014-SB

                        Plaintiff,                      **OPINION AND ORDER**

            v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[2]

                        Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

        Ronald W. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of his applications for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

Social Security Act. The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C.

_____

        [1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

        [2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is substituted as the defendant. *See* FED. R. CIV. P. 25(d)(1).

PAGE 1 – OPINION AND ORDER

§ 405(g), and the parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence in the record.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in August 1963, making him fifty years old on August 26, 2013, his amended alleged disability onset date. (Tr. 129, 581, 592.) Plaintiff is a high school graduate and

has past work experience as a pipeline laborer and general farm worker. (Tr. 130, 283, 581.) In his applications, Plaintiff alleged disability due to degenerative disc disease and neuropathy. (Tr. 153, 577.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on January 19, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 100.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on December 13, 2016. (Tr. 124-152.) On February 23, 2017, the ALJ issued a written decision denying Plaintiff's applications. (Tr. 100-11.) On March 9, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-4.) Plaintiff sought review of the ALJ's decision in federal court.

On June 13, 2019, the parties stipulated to a remand for further administrative proceedings, and the district court entered an order remanding the case to the agency and instructing the ALJ to evaluate the opinion of Plaintiff's treating physician, Samir Ale, M.D. ("Dr. Ale"), "along with other medical source opinions of record," reassess Plaintiff's residual functional capacity ("RFC"), obtain VE "evidence as necessary," and "issue a new decision." *Ronald W. v. Comm'r Soc. Sec. Admin.*, No. 6:18-cv-00828 (D. Or. filed May 14, 2018), ECF Nos. 21-22. On remand, the Appeals Council vacated the ALJ's original decision and explained that the ALJ was required to, among other things, consider the new material evidence from Dr. Ale and address only the "time period prior to May 8, 2018," because Plaintiff had filed a subsequent claim for benefits and the agency determined that Plaintiff was disabled as of May 8, 2018. (Tr. 659-60.)

///

PAGE 3 – OPINION AND ORDER

Plaintiff and a VE appeared and testified at a second hearing held on September 3, 2020. (Tr. 592-617.) On September 30, 2020, the ALJ issued a decision finding that Plaintiff was not disabled "prior to May 8, 2018," and therefore denying Plaintiff's applications. (Tr. 574-83.) This appeal followed, and the ALJ's decision stands as the final decision of the Commissioner for the purpose of the Court's review. *See Lax v. Astrue*, 489 F.3d 1080, 1082 (10th Cir. 2007) (explaining that an ALJ's post-remand decision becomes the Commissioner's final decision "unless [the] Appeals Council assumes jurisdiction of [the] case" (citing 20 C.F.R. §§ 404.984, 416.1484)).[3]

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

///

---

[3] Plaintiff agrees that the ALJ's decision stands as the Commissioner's final decision because the Appeals Council did not assume jurisdiction. (*See* Pl.'s Opening Br. at 2-3, citing 20 C.F.R. §§ 404.984, 416.1484).

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id*. at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 574-83.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 26, 2013, his amended alleged disability onset date. (*See* Tr. 574, 577, referring to the original onset date of August 18, 2013 but noting the onset date was amended to August 26, 2013.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: cervical degenerative disc disease "status-post surgery in 2017," lumbar degenerative disc disease, and peripheral neuropathy. (Tr. 577.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.*) The ALJ then concluded that Plaintiff had the RFC to perform light work, subject to these limitations: (1) Plaintiff can stand and/or walk for four hours in an eight-hour workday; (2) Plaintiff can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and engage in "bilateral overhead reaching," but cannot crawl or climb ladders, ropes, and scaffolds, (3) Plaintiff can frequently engage in "bilateral feeling with [his] upper extremities," and (4) Plaintiff must avoid "vibrations or hazards, such as dangerous machinery and unprotected heights." (Tr. 578.) At step four, the ALJ determined that Plaintiff was not able to perform his

past work. (Tr. 581.) At step five, the ALJ determined that Plaintiff was not disabled "prior to

May 8, 2018," because a significant number of jobs existed in the national economy that he

could perform, including work as a marker, production assembler, and agricultural produce

sorter. (Tr. 582.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to provide (1) clear and

convincing reasons for discounting Plaintiff's symptom testimony; (2) germane reasons for

discounting the lay witness testimony provided by Plaintiff's girlfriend, Shelly Jones ("Jones");

and (3) legally sufficient reasons for discounting the opinion of Plaintiff's treating physician,

Dr. Ale. (Pl.'s Opening Br. at 14-24.) As explained below, the Court concludes that the

Commissioner's decision is based on harmful legal error and not supported by substantial

evidence in the record. Accordingly, the Court reverses the Commissioner's denial of Plaintiff's

applications.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to

which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664,

678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective

medical evidence of an underlying impairment 'which could reasonably be expected to produce

the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)

(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the

claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the

claimant's testimony about the severity of the symptoms if she gives specific, clear and

convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

Clear and convincing reasons for rejecting a claimant's testimony include "conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-00583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 581, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ failed to meet that standard here.

### 1.    The ALJ's Decision

Plaintiff argues that the ALJ erred in discounting Plaintiff's symptom testimony because the ALJ "briefly summarized the medical record" but "did not identify any testimony that he found inconsistent with the medical record, nor explain how the record undermined that testimony." (Pl.'s Opening Br. at 16.) Plaintiff emphasizes that the Ninth Circuit has held that "providing a summary of medical evidence . . . is not the same as providing clear and convincing

*reasons* for finding [a] claimant's symptom testimony not credible." (Pl.'s Opening Br. at 16-17, quoting *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020)). Plaintiff also argues that although "the ALJ did not specifically reject [Plaintiff's] testimony based on his reported activities," the ALJ "failed to identify activities that exceed [Plaintiff's] alleged limitations," and the limited activities the ALJ cited do "not contradict [Plaintiff's] allegations of disability." (Pl.'s Opening Br. at 17-18.)

The Commissioner suggests that the ALJ's analysis satisfied the Ninth Circuit's requirements of specificity, noting that the ALJ "explained that Plaintiff's allegations were inconsistent with his activities," "noted improvement in Plaintiff's symptoms with treatment," and "considered the ample medical records during the relevant period [i.e., August 26, 2013 to May 8, 2018] that were at odds with Plaintiff's extreme symptom reports." (Def.'s Br. at 5-7, citing Tr. 579-81.)

As explained below, the Court finds unpersuasive the Commissioner's arguments and concludes that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony.

### a.      Specificity Requirements

*Lambert* and its progeny are instructive as to the level of specificity that Ninth Circuit case law requires. In *Lambert*, the ALJ "noted generically that 'the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision.'" 980 F.3d at 1277. The ALJ also "provided four high-level reasons as to why [the claimant's] allegations were 'less than fully consistent with the evidence.'" *Id.* Specifically, the ALJ cited these four reasons:

First, [the claimant] had 'not generally received the type of medical treatment one would expect for a totally disabled individual.' Second, the 'record reflect[ed] significant gaps in [the claimant's] history of treatment and relatively infrequent trips to the doctor for the allegedly disabling symptoms.' Third, [the claimant's] 'use of medications does not suggest the presence of impairments which is more limiting than found in this decision.' And finally, 'medications have been relatively effective in controlling [the claimant's] symptoms.'

*Id.* at 1270.

The Ninth Circuit determined that the ALJ's decision did "not meet the requirements set forth in our cases and d[id] not permit meaningful review." *Id.* at 1277. The Ninth Circuit held that the ALJ's generic introductory remark was insufficient, noting that "this boilerplate statement by way of introductory remark, which is routinely included in ALJ decisions denying benefits, did not identify what parts of the claimant's testimony were not credible and why." *Id.* (simplified).

The Ninth Circuit also held that the ALJ's "four high-level reasons" were insufficient. *Id.* The Ninth Circuit explained that the ALJ's "relatively detailed overview" of the medical history was "not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Id.* at 1278 (citation omitted). The Ninth Circuit also explained that "our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, . . . [or] draft dissertations when denying benefits," but they "plainly required the ALJ to do more than was done here, which consisted of offering non-specific conclusions that [the claimant's] testimony was inconsistent with her medical treatment." *Id.* at 1277 (citations omitted). Further, the Ninth Circuit explained that it was "understandable" that the district court "attempted to fill in the ALJ's reasoning" and "shore up the ALJ's decision" by citing activities-related evidence and comparing it to "specific aspects of the medical evidence" (i.e., the general category under which the ALJ's reasons fit). *Id.* at 1278. The district court's efforts, however, were "unavailing" because "'[a]lthough the inconsistencies identified . . . could be reasonable inferences drawn

from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make,' and '[the district court was] constrained to review the reasons the ALJ assert[ed].'" *Id.* (citation omitted).

Similarly, in *Wade v. Saul*, 850 F. App'x 568, 569 (9th Cir. 2021), the Ninth Circuit explained that "[s]ummarizing [the claimant's] testimony about her limitations from her mental impairments, and later mentioning that her symptoms improved with medication and treatment, does not provide clear and convincing *reasons* to discredit that testimony." *Id.* (citing *Lambert*, 980 F.3d at 1277-78)). The Ninth Circuit therefore held that the ALJ committed "reversible error." *Id.*

By contrast, in *Young v. Saul*, 845 F. App'x 518, 519 (9th Cir. 2021), the Ninth Circuit rejected the claimant's "argument that, by failing expressly to mention [the claimant's] assertion that his back pain created a need for him to take weeks off from work at a time, the ALJ thereby overlooked that testimony and failed to give reasons to discount it." *Id.* The Ninth Circuit explained that the "ALJ was not required to mention explicitly, in his ruling, each detail of [the claimant's] testimony, such as the need to take off weeks at a time from work." *Id.* at 520 (citing *Lambert*, 980 F.3d at 1277). The Ninth Circuit held that the ALJ did not err because he "specifically cited [the claimant's] written statements and testimony as among the items he had 'carefully consider[ed],' and he gave specific reasons why he did not credit [the claimant's] claims concerning the 'limiting effects' of [the claimant's] symptoms, including his 'back and knee pain.'" *Id.* at 519-20. Those reasons included inconsistent objective medical evidence, minimal treatment before the claimant's date last insured, which the ALJ found did not support the claimant's "subjective complaints," and a non-examining physician's conflicting opinion. *Id.* at 520.

PAGE 10 – OPINION AND ORDER

#### b.      Disposition

The Court concludes that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony.

Near the end of his decision, the ALJ noted generically that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 581.) Before doing so, the ALJ summarized September 2018 findings from Neal Berner, M.D., a non-examining state agency physician, which the ALJ stated "suggested" that the RFC was correct but were "not entitled to full weight" because Dr. Berner issued his opinion "outside the period at issue" (i.e., after the agency found that Plaintiff was disabled). (Tr. 578.)

The ALJ then summarized Plaintiff's medical records, which are "marked by several orthopedic and neurological disorders" and "particularly notable for cervical stenosis and indications of radiculopathy, culminating in surgery in [September] 2017." (Tr. 578-79.) The ALJ noted that Plaintiff's medical records include: (1) a March 2015 cervical spine image showing "severe spinal stenosis and an area of myelomalacia in the central cord," (2) a March 2018 lumbar spine image showing "severe bilateral foraminal stenosis," (3) observations about an "antalgic gait" and "limping," and (4) reports about "ongoing neuropathy affecting both [the] upper and lower extremities, including numbness in the feet and one hand confirmed by electrodiagnostic testing." (Tr. 578-80, citing, *inter alia*, Tr. 1114, 1175; *see also* Tr. 1112-14, Plaintiff complained of "acute exacerbation of chronic low back pain" and Plaintiff's provider observed that Plaintiff has "severe" degenerative joint disease and "severe" low back spasm, his "pain control has been deteriorating," and the March 2018 lumbar spine image showed that the "[h]igh intensity zones of the intervertebral discs are indicative of annular tears, and can be [a]

PAGE 11 – OPINION AND ORDER

significant pain generator . . . in some patients" and "asymptomatic in other[s]"; Tr. 1175, a

physiatrist noted "electrodiagnostic findings suggestive of a length dependent, sensory [greater

than] motor, primarily axonal polyneuropathy" that "seem[ed] to have worsened" and was

"[l]ikely secondary to [a] history of heavy alcohol use" and "no findings to suggest or confirm a

lumbar radiculopathy bilaterally," but added that he could "not necessarily rule [radiculopathy]

out" and "further blood work" was necessary to "rule out other possible" causes for Plaintiff's

polyneuropathy).

In summarizing Plaintiff's medical records, the ALJ noted that the records also include

some less remarkable evidence, including, but not limited to, a negative straight leg raise test and

providers' observations about Plaintiff exhibiting a normal gait and station, full strength, and

intact reflexes on exam. (Tr. 579-80.) The ALJ also referenced Dr. Berner's "interpret[ation]" of

certain findings, discussed evidence that the ALJ believed supported his conclusion that

Plaintiff's "multiple [physical] impairments would . . . be reasonably addressed by" the RFC, and

determined that there was "no need to include psychologically-based limitations beyond limiting

the onset of pain via appropriate restrictions." (*Id.*)

Thereafter, the ALJ made two broad statements about Plaintiff, third parties, and/or

unnamed medical sources, one of which is an incomplete sentence. (*See* Tr. 580-81, "Any

allegation by [Plaintiff], third parties, or medical sources suggesting that [Plaintiff] could not

sustain [this RFC] is entitled to little weight. . . . Third party reports are similarly considered but

discounted. [Plaintiff] specifically was stated to be able to walk only [twenty-five] yards before

significant rest, when he was at a minimum able to[.]"). Other than a brief summary of Plaintiff's

testimony and the ALJ's boilerplate concluding remark about Plaintiff's statements not being

"entirely consistent with medical evidence and other evidence for the reasons explained in this decision," the ALJ provided only the following explanation for discounting Plaintiff's testimony:

> [Plaintiff] indicat[ed] that [he] worked despite foot and other pain, and that his symptoms eased with less time on the feet, [but] did not show that his ability to stand or walk was limited to a particular amount of time. Consequently, with an overall limit of four hours, he would be expected to be able to stand or walk between routine breaks. His reported numbness in the left hand is addressed by limiting feeling. His implication of continued severe pain is inconsistent with his own activities. In 2014, after the onset, [Plaintiff] himself believed that he was capable of chopping down trees. Even as of April 4, 2020, [Plaintiff] was noted to be able to do activities of daily living without limitations, and able to do housework with limitations. He exercises regularly and could state that his health was 'good.' He has had no additional surgeries, and is without a pattern of emergency room visits. Medications are those typical for his complaints.

(Tr. 580-81.)

The Court concludes the ALJ erred in discounting Plaintiff's testimony. As an initial matter, the ALJ's reference to Plaintiff's "implication of continued severe pain" as inconsistent with his activities and the subsequent discussion of Plaintiff's activities is the only portion of the decision that may satisfy the Ninth Circuit's specificity requirement. *See Young*, 845 F. App'x at 519-20 (holding that the ALJ satisfied the Ninth Circuit's requirements of specificity by providing "specific reasons" for discounting the claimant's testimony about the "limiting effects" of his symptoms, such as "back and knee pain"). This portion of the ALJ's decision, however, is nevertheless deficient because, as explained below, it is evident that the ALJ considered evidence about Plaintiff's activities selectively, and ignored evidence that contradicted his findings. *See, e.g.*, *Jacob T. v. Saul*, No. 3:19-cv-01151-SB, 2020 WL 4451163, at *4 (D. Or. Aug. 3, 2020) ("An ALJ errs when [he] considers evidence about a claimant's activities selectively, and ignores evidence that contradicts [his] findings.") (simplified).

For example, the ALJ cited Plaintiff's ability to cut down trees, but the record reveals that Plaintiff performed this activity one time and experienced pain-related issues following the

activity due to his physical impairments. (*See* Tr. 134, at the first hearing on December 13, 2016,

Plaintiff explained that he cut some trees down on one occasion after the amended onset date, but

he could not perform this activity on a sustained basis because it was "physically too much" and

"involves a lot of bending over and standing up and picking things up"; Tr. 596, 600-01, at the

second hearing on September 3, 2020, Plaintiff further explained that he was a logger in the

1980s and after his amended onset date, a friend paid him $646 for using a chainsaw to cut

down, not haul away or "clean[] . . . up," some "30-foot, little pine trees," but he had problems

performing the work and was "in pain" due to his cervical spine issues, which the ALJ's decision

describes as "notable" and were not surgically repaired until several years later; *see also* Tr. 860-

61, June 1, 2017, Plaintiff's orthopedist stated that Plaintiff's exam was positive for neck pain,

shoulder impingement, and "concomitant shoulder arthropathy," Plaintiff's symptoms were

"consistent with severe and progressive myelopathy and surgical intervention [was] indicated,"

and "surgery need[ed] to proceed").

The ALJ failed to explain how Plaintiff's report about cutting down trees on one occasion

undermines the entirety of his symptom testimony. (*See* Tr. 581.) Although the Commissioner

argues that Plaintiff's tree cutting "undercut[s] his claims that he was unable to stand or use his

hands for even brief periods" (Def.'s Br. at 5), the record does not address whether Plaintiff took

breaks when cutting down the trees due to his physical impairments. More importantly, however,

the ALJ did not state or find that Plaintiff's tree cutting conflicted with his testimony about his

ability to stand or use his hands. Accordingly, the Court rejects the Commissioner's *post-hoc*

rationalization for the ALJ's decision. *See Lambert*, 980 F.3d at 1278 (explaining that even if the

identified inconsistency between testimony and evidence "could be reasonabl[y] . . . drawn"

from the ALJ's decision, "the credibility determination is exclusively the ALJ's to make, and [courts] are constrained to review the reasons the ALJ assert[ed]") (simplified).

The ALJ also noted that Plaintiff "exercises regularly and could state that his health was good." (Tr. 581; *see also* Tr. 579, citing Tr. 1112 and Tr. 1130 in regard to these reports). Although there is one discrete reference to Plaintiff's "good" health and "regular[]" exercise in the medical records the ALJ referenced, the same medical records include reports about Plaintiff's worsening symptoms, acute exacerbation of his low back pain, poor symptom control, abnormal lumbar spine imaging, "deteriorating" pain control, "severe" degenerative joint disease and "severe" low back spasm, and impressions of "peripheral vascular disease and lumbar radiculopathy" and "[m]oderate/severe claudication." (*See* Tr. 1112-15, 1123-30). It is not clear how these records undermine Plaintiff's testimony or support the ALJ's findings.

Nor is it clear how Plaintiff's "regular" exercise undermines his symptom testimony. The record reflects that Plaintiff's exercise consists of walking as part of a cardiac rehabilitation program, Plaintiff's ability to walk is very limited and involves stopping, and his walking results in pain and claudication. (*See* Tr. 1105, March 24, 2020, Plaintiff is only "able to walk his dog 100 yards before stopping"; *see also* Tr. 1196, March 8, 2017, Plaintiff complained of worsening symptoms and reported that "exercise and walking" are exacerbating factors; Tr. 93, April 3, 2017, symptoms are made worse with "walking"; Tr. 1140, 1143, August 20, 2018, Plaintiff "does not exercise regularly" and was "doing poorly" and experiencing "worsen[ing]" symptoms and Plaintiff's provider referred to his "inadequate exercise regimen"; Tr. 971, September 13, 2019, Plaintiff reported that he "ambulates his dog daily for [thirty] min[ute]s"; Tr. 968, September 16, 2019, "States he is walking up to [twenty minutes a] day with his dog for home exercise and his legs hurt when he ambulates. He uses a cane . . . [due to] leg weakness and

neuropathy to his feet[.]"; Tr. 1107, September 26, 2019, Plaintiff was walking daily, but stated

that "he can barely walk 200 feet before he experience[s] bilateral claudication which he

describe[d] as severe and activity limiting," and his cardiologist noted that he could now "walk

[eight] minutes on the treadmill which is [a] significant improvement before he starts

experiencing claudication"; Tr. 954, October 4, 2019, Plaintiff reported that he walks his dog for

thirty minutes per day and reported moderate "claudication pain" during treadmill work; Tr. 948,

October 11, 2019, Plaintiff "tolerated" aerobic activity on a treadmill, but also reported the onset

of bilateral calf pain after one to two "minutes [which] became severe at [eight]"; Tr. 942,

October 25, 2019, Plaintiff reported that his "claudication pain is always [three to four] at rest"

and he was "walking his dog [thirty minutes a] day"; Tr. 939, November 1, 2019, Plaintiff

reported that he was "walking his dog for home exercise for [approximately thirty minutes]

daily" but his claudication pain is "always at a [four] even with sitting and never goes away

staying at a [three to four]").

It is likewise unclear how Plaintiff's daily activities undermine his symptom testimony.

Plaintiff's activities consist of, among other things, preparing simple meals (microwaveable and

frozen foods), "laying down most of the day," "stay[ing] off [his] feet as much as possible,"

watching television, sitting outside in a chair when his "pain is low," and spending an hour or

less per week on chores, such as laundry and mowing a "little yard" with "rest here and there."

(Tr. 303-05, 787-89.) Given this context, and contrary to the ALJ's suggestion (Tr. 581), it is not

particularly notable that Plaintiff once reported that he can perform his activities of daily living

without limitations. (*See* Tr. 835, Plaintiff presented for therapy "following cervical spine

anterior fusion" and Plaintiff's therapist assessed "[d]ifficulty with stairs and [d]ifficulty with

activities of daily living").

Based on this record evidence and the case law cited herein, the Court rejects (1) the Commissioner's suggestion (and *post-hoc* rationalization) that Plaintiff's ability to walk his dog for up to thirty minutes per day conflicts with his testimony about how walking is painful or that he cannot stand or walk for more than several minutes at a time, and (2) the Commissioner's argument that substantial evidence supports the ALJ's finding that Plaintiff's activities of daily living undermine his "allegations of disabling pain."[4] (*See* Def.'s Br. at 5, citing, *inter alia*, Tr. 1105.) The ALJ and Commissioner fail to address notable reports that undermine their conclusions.

The ALJ also implied that Plaintiff's testimony conflicted with "no additional surgeries, and [a lack of a] pattern of emergency room visits." (Tr. 581.) The Commissioner does not defend or address Plaintiff's arguments about this portion of the ALJ's decision. (*Compare* Pl.'s Opening Br. at 19-20, *with* Def.'s Br. at 5-8.) As Plaintiff correctly points out, the record "documents emergency room visits and cervical discectomy and fusion" during the period at issue, and a subsequent referral for "surgical consideration regarding the lumbar spine[.]" (Pl.'s Opening Br. at 20, citing Tr. 480-81, 834-35, 914-16, 1147; *see also* Tr. 1147, July 2, 2018, Plaintiff's physiatrist stated that he would "send the referral in" about "a surgical opinion for [the] lumbar spine" and "consider referral to [n]eurology to see if any further work up is necessary for [Plaintiff's] constellation of symptoms," he could "not necessarily rule[] out" lumbar radiculopathy, there was "[l]ikely polyneuropathy secondary to [a] history of heavy [alcohol] use, or idiopathic/cryptogenic," Plaintiff "may benefit from referral to [a] chronic pain

---

[4] Although Dr. Ale's opinion also addresses how long Plaintiff can stand and walk in an eight-hour workday (Tr. 818), the evidence and testimony above also undermines the ALJ's finding that Plaintiff failed to "show that his ability to stand or walk was limited to a particular amount of time." (Tr. 581.)

management center," Plaintiff has a "history of severe cervical stenosis [status post] decompressive surgery," and lumbar images revealed "bilateral [neuroforaminal] stenosis, severe at L4-5").

In light of this evidence, the ALJ erred in implying that Plaintiff's symptom testimony is inconsistent with his lack of "additional surgeries" or a "pattern of emergency room visits." *See Sherry Lynn D. K. v. Saul*, No. 20-2032, 2021 WL 4916723, at *8 (N.D. Cal. May 3, 2021) ("The ALJ did not explain how a lack of unplanned emergency interventions (like emergency room visits . . . ) undermines Plaintiff's testimony. Such interventions are generally not part of an intentional course of treatment and are instead meant to deal with sudden intense spikes in symptoms. The ALJ did not identify anything in Plaintiff's testimony that would indicate such sudden intense spikes in symptoms would be expected (and therefore the lack of such spikes probative).").

Finally, the Commissioner argues that the ALJ provided sufficiently specific findings and explanations about how Plaintiff's testimony was inconsistent with evidence of improvement in his symptoms (Def.'s Br. at 6, citing Tr. 579), and that certain medical records "were at odds with Plaintiff's extreme symptom reports." (Def.'s Br. at 7, citing Tr. 578-80.) These portions of the ALJ's opinion demonstrate that the ALJ summarized the medical records and evidence he believed supported his RFC, but did not identify which testimony he found not credible nor explain which evidence contradicted that testimony. (*See* Tr. 578-80.) Further, although the ALJ suggested that Plaintiff had "full[y] recover[ed]" by July 2019—i.e., over a year after the ALJ and Commissioner determined that Plaintiff was disabled (*see* Tr. 575, the ALJ found "no reason to the disturb" the state agency's determination that Plaintiff was "disabled as of May 8, 2018," and therefore addressed only whether Plaintiff was "disabled in the period August 26, 2013 to

May 8, 2018")—the ALJ acknowledged that Plaintiff did not undergo "decompression of the spinal cord" until September 2017 and Plaintiff's physician stated that "it might take up to [a] year or so for symptoms to improve given the severity of the spinal stenosis and myelomalacia." (Tr. 579.)

Relatedly, the ALJ acknowledged that the record was "particularly notable for cervical stenosis and indications of radiculopathy, culminating in surgery" eighth months before the date on which the ALJ agrees that Plaintiff was disabled, that pre-surgery imaging "showed extensive degenerative disease with disc and osteophyte complexes . . . resulting in severe spinal stenosis and an area of myelomalacia in the central cord," and that Plaintiff reported a ten-year "history with worsening neck and arm pain." (Tr. 579.) The ALJ also failed to address that Plaintiff's physiatrist could not rule out lumbar radiculopathy or other potential causes of polyneuropathy. (*See* Tr. 579-80, 1147, 1175.)

Based on the discussion above and evidence cited herein, the Court finds that to the extent the ALJ discounted Plaintiff's testimony based on evidence of improvement or conflicting objective evidence, the ALJ's analysis does not meet the Ninth Circuit's requirements of specificity, nor does substantial evidence support discounting Plaintiff's testimony on these grounds.

In sum, the ALJ erred in discounting Plaintiff's testimony. *See Wade*, 850 F. App'x at 569 (explaining that "[s]ummarizing" record evidence and "later mentioning that [the claimant's] symptoms improved with medication and treatment, does not provide clear and convincing reasons to discredit that testimony" (citing *Lambert*, 980 F.3d at 1278)); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111-14 (9th Cir. 2021) (holding that substantial evidence supported that the claimant was not disabled at the time of the 2018 hearing but nevertheless reversing the

ALJ's evaluation of the claimant's testimony because the ALJ "did not adequately consider how [the claimant's] symptoms changed over time" or "sufficiently consider the duration of, or chronological fluctuation in, [the claimant's] symptoms" since the 2012 onset date, and instead focused and relied on evidence from 2015 through 2018); *McDowell v. Colvin*, No. 2:15-cv-00087, 2016 WL 2347854, at *4 (D. Vt. May 4, 2016) ("One of the records [the ALJ] cited . . . is particularly unhelpful in demonstrating [any] medical improvement . . . because it was prepared in March 2013, a date falling well within the period that the ALJ found [the claimant] to be disabled.").

> ### 2.    Conclusion

For these reasons, the Court finds that the ALJ committed harmful error in discounting Plaintiff's symptom testimony because the ALJ failed to provide at least one clear and convincing reason for doing so. *Cf. Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's discounting of the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [it] as not credible"); *see also Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) ("[An] ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason" (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005))).

## II.    LAY WITNESS TESTIMONY

Plaintiff argues that the ALJ failed to provide germane reasons for discounting the lay witness testimony provided by Plaintiff's girlfriend, Jones. (Pl.'s Opening Br. at 23-24.) The Court agrees.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives

reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (simplified). Here, the ALJ made two broad statements about third parties, one of which is an incomplete sentence. (*See* Tr. 580-81, "Any allegation by . . . third parties . . . suggesting that [Plaintiff] could not sustain [the ALJ's RFC] is entitled to little weight. . . . Third party reports are similarly considered but discounted. [Plaintiff] specifically was stated to be able to walk only [twenty-five] yards before significant rest, when he was at a minimum able to[.]"). Accordingly, the ALJ failed to provide any reason, let alone a germane reason, for rejecting Jones's lay testimony.

The Commissioner concedes that the ALJ did not provide an explanation as to why he "considered but discounted" Jones's testimony, and that the ALJ's decision "lacks a specific discussion" about Jones's testimony. (Def.'s Br. at 10, citing Tr. 581.) The Commissioner, however, argues that the ALJ did not commit an "error, let alone [a] reversible error," as the ALJ was only required to explain why he rejected "significant probative" evidence, and Jones's testimony did not amount to such evidence because she only "described Plaintiff's present limitations as of August 2018—a time at which there is no dispute that Plaintiff was disabled." (Def.'s Br. at 10-11.) The Commissioner also argues that any error was harmless because the ALJ's reasons for discounting Plaintiff's testimony apply equally to Jones's testimony. (Def.'s Br. at 11.)

The Courts finds unpersuasive the Commissioner's arguments for several reasons. First, as discussed, the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony, and therefore those reasons cannot save the ALJ's failure to complete his analysis of Jones's testimony.

///

Second, the Commissioner is correct that the ALJ was not required to discuss evidence that was not significant or probative, and that evidence relating solely to the period outside the period of disability at issue is not significant or probative. *See Burkett v. Berryhill*, 732 F. App'x 547, 553 (9th Cir. 2018) (holding that the ALJ "did not err by declining to discuss" lay witness testimony, noting that the ALJ "acknowledged" but "declined to rely" on the lay testimony because it "address[ed] the claimant's functioning outside the period at issue," explaining that "[a]n ALJ is not required to discuss evidence that is not significant or probative, and evidence relating to [the claimant's] symptoms and limitations outside the alleged period of disability does not qualify as significant or probative," and adding that any error was harmless because the lay "testimony described the same limitations as [the claimant's properly discounted] testimony") (simplified); *Spence v. Colvin*, 617 F. App'x 752, 754 (9th Cir. 2015) (holding that the ALJ did not err in discounting lay witness testimony on the ground that it was "outside the relevant period of disability").

Here, however, Jones's testimony does not appear to address "limitations only after [Plaintiff] was already determined to be disabled" (Def.'s Br. at 11), as the Commissioner argues. Jones filled out her third-party report on August 28, 2018, less than four months after May 8, 2018, the date on which Plaintiff was indisputably disabled, and Jones testified that she has known Plaintiff for thirty-two years, lives with Plaintiff, and has observed, for example, that Plaintiff has been "unable to sit, stand or walk for a long time [and] is always in pain[.]"[5] (Tr. 794-801.)

---

[5] It is not clear when the state agency made its final decision that Plaintiff was disabled as of May 8, 2018. (*See* Pl.'s Opening Br. at 2; Tr. 574-75, 660-74, 758-59.) Plaintiff filed the relevant application in May 2018 (Tr. 758), and it may have taken several months for the state agency to make its final determination. Thus, at the time Jones completed her report, the period

Given the short amount of time that passed between Plaintiff's already established disability date and the date on which Jones completed her report, and the words Jones used therein, the Court cannot conclude that Jones's testimony was insignificant or not probative. Accordingly, the ALJ's unexplained discounting of Jones's testimony was harmful error. *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (emphasizing that lay witness "testimony is competent evidence and *cannot* be disregarded without comment") (simplified); *Howell v. Astrue*, 248 F. App'x 797, 800 (9th Cir. 2007) (explaining that the ALJ discounted the lay testimony because it did not "broach the time period in question" and "focused on . . . present symptoms," the lay testimony was "ambiguous as to whether it was descriptive" of the claimant's "then-current condition," past condition, or "condition during more than one time frame," and "[i]f [the lay] testimony was not clearly addressed to the relevant time period, the ALJ had an obligation to ask clarifying questions before rejecting the testimony on that basis, and it was error to reject the testimony without doing so") (simplified); *cf. Peksenak v. Kijakazi*, No. 20-35823, 2021 WL 4948266, at *1 (9th Cir. Oct. 25, 2021) (affirming the discounting of a lay witness's report that was "written four years after the date last insured and did not clearly address the relevant time period").

///

///

///

///

///

---

up to and including August 28, 2018 may have still been in dispute and part of the period at issue.

### III.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law[6]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence [in the record].'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it

---

[6] The new regulations that govern how ALJs must evaluate medical opinion evidence do not apply here because Plaintiff filed his applications before March 27, 2017. *See generally Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (addressing the new regulations that apply to Social Security applications filed on or after March 27, 2017).

with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

### B.    Analysis

#### 1.    Dr. Ale's Opinion

Dr. Ale completed a treating source statement on May 30, 2017. (Tr. 816-20.) In his treating source statement, Dr. Ale explained that he had treated Plaintiff since February 25, 2015, and Plaintiff suffered from cervical spinal stenosis, cervicalgia, bilateral foot/leg pain, tobacco dependence, and "significant spinal stenosis, awaiting spinal surgery." (Tr. 816.) Dr. Ale explained that Plaintiff's symptoms included neck pain, arm and hand weakness, severe leg pain, and leg numbness, and that Plaintiff's symptoms were corroborated by his MRI results, which Dr. Ale cited in support of his opinions. (Tr. 817.) Dr. Ale added that Plaintiff needs to rest every fifteen to twenty minutes, Plaintiff was taking anti-inflammatories, muscle relaxers, and opioid pain medication, Plaintiff could sit for two hours and stand/walk for one hour during an eight-hour workday, Plaintiff would need to take unscheduled work breaks, Plaintiff can never lift and carry twenty pounds or more, and Plaintiff would him miss more than four workdays per month. (Tr. 817-20.)

#### 2.    Disposition

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Ale's opinion. (Pl.'s Opening Br. at 20-23.) The Court agrees.

The ALJ addressed Dr. Ale's opinion on the last page of his decision, and assigned "little weight" to the opinion. (Tr. 583.) The Commissioner asserts that the ALJ provided three legally sufficient reasons for doing so: (1) "Plaintiff's activities were inconsistent with Dr. Ale's opinion," (2) "Dr. Ale's opinion was not consistent with objective findings from the relevant

period," and (3) "Dr. Ale's assessment that Plaintiff would miss four or more days of work a month lacked objective findings." (Def.'s Br. at 8-9.) Substantial evidence does not support these reasons.

In discounting Dr. Ale's opinion, the ALJ only referred generally to "daily activities [that] do not suggest significant limitations." (Tr. 583.) As discussed, the ALJ's reliance on Plaintiff's activities was misplaced because (1) the ALJ considered activities-related evidence selectively, and ignored evidence that contradicted his findings, (2) it would be improper for the Court to affirm the ALJ's decision based on the Commissioner's *post-hoc* rationalizations, and (3) the ALJ and Commissioner cite activities that, when given their appropriate context, are entirely unremarkable. (*See* Def.'s Br. at 9, relying on Plaintiff's ability to "haul firewood" even though the ALJ did not do so, and to "do laundry, perform chores, . . . clean both inside and out . . . [and] go on [thirty]-minute walks for exercise," citing, *inter alia*, Tr. 303-05, 1105, which show that Plaintiff is only "able to walk his dog 100 yards before stopping," stays off his feet "as much as possible" each day because it is "[p]ainful to walk [and] stand," and spends one "hour or so once a week" bringing laundry to the wash room, folding clothes, bringing in wood (the size and weight of which are unknown, as is the method of transportation) for a stove, and cleaning up "inside and out").

With respect to conflicting objective evidence, the Commissioner argues that the ALJ appropriately discounted Dr. Ale's opinion because "the evidence showed that Plaintiff routinely walked normally . . . [and] maintained normal strength, including grip strength." (Def.'s Br. at 8, citing, *inter alia*, Tr. 392, 462, 1103.) The evidence described herein demonstrates that Plaintiff has testified about and exhibited notable walking limitations and that the ALJ and Commissioner impermissibly isolate normal findings while ignoring numerous abnormal findings that support

Plaintiff's improperly discounted testimony and claim of disability.[7] (*See, e.g.*, Tr. 392,

documenting a normal gait and stance but adding that electrodiagnostic studies were "consistent

with distal symmetric polyneuropathy with possible superimposed peroneal nerve abnormality

on the right possibly related to [Plaintiff's] prior history of knee and/or ankle injury," and that it

"would seem most likely that [Plaintiff's] burning dysesthetic pain is related to painful peripheral

neuropathy"; Tr. 463, February 19, 2015, "There is electrodiagnostic findings of active

denervation and chronic reinnervation in the left triceps. This is suggestive of a [cervical]

radiculopathy . . . . Given his history and physical examination findings . . . , I am concerned for

a cervical spinal stenosis or myelopathy. [The left] median motor study was mildly prolonged

with normal sensory studies. A left C8 radiculopathy may explain this finding. . . . [A]

sensorimotor polyneuropathy . . . may also explain this finding. [Lastly, the left] ulnar sensory

study was also abnormal. Possibly due to a sensorimotor polyneuropathy. Ulnar neuropathy

across the elbow cannot be ruled out. . . . Today's test was suggestive of a left cervical

radiculopathy. X-ray and MRI of C-spine ordered"; Tr. 579, the ALJ observed that a March 26,

2015 "MRI of the cervical spine . . . showed extensive degenerative disease with disc and

osteophytes complexes. . . resulting in severe spinal stenosis and an area of myelomalacia in the

central cord"; Tr. 1103, "Severe [peripheral arterial disease], activity limiting [and] lifestyle

limiting . . . , with [a CT scan] demonstrating distal right femoral arteries occluded in the distal

---

[7] The Ninth Circuit has made similar observations. *See, e.g.*, *Kelly v. Berryhill*, 732 F. App'x 558, 561-62 (9th Cir. 2018) ("By isolating a few normal findings from the MRI results while ignoring the numerous abnormal MRI findings as well as all of the other abnormal clinical findings in the record, the ALJ erred. . . . [T]he ALJ is not free to ignore relevant, competent evidence—such as a recent [and relevant time period] MRI for a claimant who suffers from lumbar degenerative disc disease and lumbar spondylosis—that would lend support to a claim of disability.").

thigh"; *see also* Tr. 358, 830, 1141, 1197, wide-based and antalgic gait, limping, and difficulty with tandem gait).

The ALJ also discounted Dr. Ale's opinion on absenteeism on the ground that it "is not supported [because] it is speculation with a lack of objective findings." (Tr. 583.) Courts, however, have rejected an ALJ's discounting of an absenteeism opinion under circumstances similar to those presented here. *See, e.g.*, *Thies v. Colvin*, No. 1:15-cv-00258, 2016 WL 5746343, at *8 (D. Idaho Sept. 30, 2016) (holding that the ALJ's rejection of a treating physician's opinion on absenteeism as "speculative" was "insufficient to overcome the more fundamental flaws in the ALJ's opinion," namely, an erroneous adverse credibility determination and improper reliance on "facts and information from" outside the relevant period); *see also Jasmine K. v. Saul*, No. 20-0728, 2021 WL 963476, at *4 (W.D. Wash. Mar. 15, 2021) ("Because the ALJ's rejection of [the treating physician's] absenteeism opinion [as speculative] appears to be based on sheer disbelief rather than a legitimate rationale for discounting, the Court finds this line of reasoning to be erroneous."); *Jackson v. Astrue*, No. 11-cv-4731, 2012 WL 835979, at *1 (C.D. Cal. Mar. 8, 2012) (explaining that the ALJ's rejection of a treating physician's absenteeism opinion as "speculative" was "cryptic," "tantamount to a non-explanation," and comparable to "say[ing] that medical opinions are not supported by sufficient objective findings . . . [which] does not achieve the level of specificity [Ninth Circuit] cases have required, even when the objective factors are listed seriatim" (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988))).

Finally, the ALJ discounted Dr. Ale's opinion based on the conflicting opinion of the non-examining state agency physician, Dr. Berner. (Tr. 583; *see also* Tr. 666-74, September 27, 2018, Dr. Berner summarized his record review and stated that "[o]nset is fully supported as of

[the date of filing] of 5/8/18," and Dr. Ale's May 2017/pre-September 2017 surgery opinion was only "partially consistent with [the] evidence" and "not fully supported by the totality of [the] evidence"; Tr. 817, Dr. Ale explained that his opinion was based largely on Plaintiff's "recent MRI results"). Standing alone, however, Dr. Berner's non-examining opinion is not enough to meet the substantial evidence standard. *See Blacksher v. Berryhill*, 762 F. App'x 372, 375-76 (9th Cir. 2019) (holding that the ALJ failed to provide specific and legitimate reasons for discounting an examining psychologist's opinion and explaining that a non-examining psychologist's conflicting opinion was "not enough on its own to meet the substantial evidence standard").

For all of these reasons, the Court concludes that the ALJ failed to provide legally sufficient reasons, supported by substantial evidence in the record, for discounting Dr. Ale's opinion.

## IV.    REMEDY

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant

testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

B.     **Analysis**

The Court concludes that Plaintiff meets the credit-as-true standard here, and a remand for benefits is appropriate.

First, Plaintiff's "case was remanded to the agency for further proceedings once before, so the record has been fully developed and further administrative proceedings would serve no useful purpose." *Pulliam v. Berryhill*, 728 F. App'x 694, 697 (9th Cir. 2018) (citing *Garrison*, 759 F.3d at 1020). Second, the ALJ failed properly to evaluate an "opinion[] from [a] treating physician[] indicating that [Plaintiff] is disabled, and [all] of the ALJ's reasons for discrediting [Plaintiff's] testimony are not specific, clear, and convincing." *Id.* The ALJ also failed properly to evaluate lay witness testimony. Third, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. (*See* Tr. 615-16, 819-20, the VE testified that standing alone, Dr. Ale's opinions about absenteeism, or Plaintiff's ability to sit for two hours during an eight-hour workday and stand and/or walk for "a total of one hour," would preclude gainful employment, and Dr. Ale's opinion about Plaintiff's ability to perform less than frequent fingering and handling would rule out jobs at the "light level").

For these reasons, and because the Court does not have serious doubt about whether Plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits. *See Newton v. Saul*, 839 F. App'x 178, 179 (9th Cir. 2021) (reversing district court

opinion remanding for further proceedings and instead remanding for an award of benefits

where, as here, the ALJ erred in discounting a treating physician's opinion, the claimant's

testimony, and other evidence, additional medical evidence supported the claim of disability, and

the "conflicting medical opinions in the record . . . came from non-examining doctors"); *Varela*

*v. Saul*, 827 F. App'x 713, 714 (9th Cir. 2020) (reversing district court opinion remanding for

further proceedings and instead remanding for benefits where, as here, the ALJ erred in

discounting a treating physician's opinion based on conflicting non-examining opinion

evidence).

## CONCLUSION

Based on the foregoing reasons, the Court REVERSES the Commissioner's decision and

REMANDS this case for an award of benefits.

**IT IS SO ORDERED.**

DATED this 30th day of March, 2022.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge